UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                             :

ALLISON ALT,                                :

                                  :

                    Plaintiff,      :

                                  :  Case No. 1:20-cv-4478

                    v.               :

                                  :  COMPLAINT

SOCIAL IMPACT 360, INC. and THOMAS  :
RAFFA                               :

                                  :

                  Defendants   :

                                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        Allison Alt, by her counsel, Slarskey LLC, and for her Complaint alleges, upon information and belief, as follows:

**<u>Nature of Action</u>**

        1.      This is an action to recover unpaid wages, benefits, and for breach of an employment contract arising out of Alison Alt's ("Alt") employment as Executive Director of Social Impact 360, Inc ("Social Impact 360").

        2.      Alt is a professional with extensive experience in non-profits and public policy. She was recruited to Social Impact 360 in 2017 with promises of a platform with resources from which she would be empowered to build a nationwide social entrepreneurship program and have the opportunity to work with future socially conscious business leaders and social entrepreneurs at top colleges. She executed a clear and unambiguous employment agreement ("Employment Agreement") entitling her to $75,000 annually plus benefits and performed her job dutifully.

        3.      Central to this dispute, and principally responsible for the failure to pay Alt, is Alt's direct supervisor, Defendant Thomas Raffa ("Raffa"). Raffa, who recruited and supervised Alt, is a partner and the head of the "Nonprofit & Social Sector Group" at Marcum LLP, an

1

international accounting and consulting firm. Raffa touts his experience as a board member on a number of high profile non-profit boards, such as the Boston Philharmonic Orchestra and the Park City Community Foundation.

4.      Raffa is a founding donor of Social Impact 360, and has served as the Chairman of the Board and the President of Social Impact 360 for the entirety of Allison's tenure at Social Impact 360.[1] As Chair of the Board, Raffa controls all financial decisions for the organization, including payroll and accounting. The organization's operations are underwritten by the members of its board of directors (the "Board"), who each make financial commitments to fund Social Impact 360 as part of their Board service.  It is Raffa's responsibility to ensure Board members live up to their financial commitments.

5.      This Board funding structure was fundamental to the organization because, at the time of Alt's onboarding, the organization had yet to develop a marketable product that could be leveraged to support other fundraising activities.

6.      Since 2017, Alt has been subjected to repeated and pervasive cycles of missed payroll followed by catch up payments months later. This cycle of missed pay has forced Alt to seek additional work, take a loan from family, and draw down savings just to meet basic necessities. Since 2018 alone, Social Impact 360 has missed 38 paychecks, totaling more than $110,000 dollars' worth of unpaid wages, with approximately $36,000 outstanding as of the filing of this Complaint.

7.      The back pay due to Alt is undisputed insofar as it is *well documented in Social Impact 360's accounting records* maintained at Raffa's firm, Marcum LLP. Alt has consistently

---

[1] https://www.marcumllp.com/people/thomas-raffa, last accessed May 20, 2020.

kept Raffa informed regarding the missed payroll periods and made several pleas for Raffa to resolve the back pay issues.

8.     Social Impact 360 and Raffa have also breached their other obligations to Alt by, *inter alia*, failing to fund a Single (K) retirement account, failing to pay several years' worth of commuter benefits, and failing to deliver several other benefits promised pursuant to Alt's Employment Agreement.

9.     Towards the end of 2019, the missed paychecks became routine. Alt had been forced to endure months of work without pay.

10.    In late 2019, as the organization considered more sustainable methods of funding operations and events, Alt proposed expanding the Board footprint and raising the level of commitments to the organization. This endeavor, Alt explained, would require a renewed commitment from the Board to fund Alt's salary and to resolve the outstanding back pay because she would be unable to devote significant time to other fundraising activities if she focused on recruiting new Board members. With the Board's blessing and promises to fund her salary and address outstanding back pay issues, Alt focused on recruiting additional Board members, and developed business plans to position the organization to move forward with stability.

11.    Even while Alt successfully recruited new Board members, the Board failed to meaningfully catch up on Alt's back pay, or to fund her salary while she was working on these efforts. The COVID-19 pandemic was a breaking point for Alt's financial ability to bear the burden of missed payrolls.

12.    Then, during a Board meeting on April 21, 2020, from which Alt was excluded at Raffa's request, Raffa proposed the Board furlough Alt and falsely claimed that he had been unaware of Alt's accrued back pay. In response to the back pay disclosure, several new Board

members, who Allison had spent months recruiting, immediately resigned in response to, and expressed anger at, Raffa's dishonesty and mistreatment of the organization's key employee, and rescinded their commitments to the organization.

13.     Alt was informed that she would be furloughed on April 23, 2020, effective at the end of the day on April 24, 2020. Even though Alt was placed on involuntary furlough, Raffa continued to demand that she work to transition responsibilities, without pay, for several days; Alt finally refused to work any longer without pay.

14.     In the ensuing weeks, not only did Social Impact 360 and Raffa fail, yet again, to fund payroll, despite having sufficient funds to do so, but the organization then proceeded to delayed payment of *any* back pay for one month despite representations by Raffa that some funds had been raised to address Alt's backpay. The Board was fully aware, even as it delayed paying Alt amounts it was capable of paying, that Alt was in a precarious financial position.

15.     Presently, Social Impact 360 and Raffa owe Alt an estimated $36,000 in backpay, $3,800 in unpaid commuter benefits, unreimbursed business expenses, retirement benefits, and now, attorneys fees and penalties, for being forced to bring this action to recover such amounts.

**Parties**

16.     Alt is an individual residing in Brooklyn, New York. Plaintiff has been employed as the Executive Director of Social Impact 360 from March 1, 2017 until and including April 24, 2020, when she was furloughed. She is the sole employee of Social Impact 360. During the missed pay periods in question, Alt worked out of a Social Impact 360's office space in New York, New York.

17.     Social Impact 360 is an Indiana non-profit corporation, engaged in organizing and administering a multi-state social entrepreneurship curriculum and a global alumni business for good program. Social Impact 360 was in the process of officially moving their headquarters from

Marcum LLP, 1899 L Street NW, Floor 9, Washington, D.C. 20036 to 143 W. 29th Street, Floor 3, New York, New York 10001-5769 in early 2020. However, since Alt's furlough, at Raffa's direction, all operations have been returned to the Washington, D.C. headquarters.

18.     Raffa is the President, and Chairman of the Board of Directors of Social Impact 360.  Raffa resides in Washington, D.C. and identifies his address, for purposes of his role as President and Chairman of the Board, as that of his employer: Marcum LLP, 1899 L Street NW, Floor 9, Washington, D.C. 20036.

## Jurisdiction and Venue

19.     This Court has jurisdiction over this matter (i) pursuant to 28 U.S.C. §1331 because it arises under federal law, (ii) pursuant to 28 U.S.C. §1332(a)(1) because it arises between citizens of different States, and (iii) pursuant to 28 U.S.C. §1332(b) because the amount to be recovered is in excess of $75,000, plus attorney's fees, and 9% prejudgment interest under New York law, and (iv) pursuant to 28 U.S.C. §1367 because Plaintiff's State and common law claims arise from the same case or controversy.

20.     This action is properly brought in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## Detailed Allegations

### Background on Social Impact 360 and Thomas Raffa

21.     Social Impact 360 is a not-for-profit mentorship-based training organization for young social entrepreneurs. The organization teaches young entrepreneurs how to build businesses that solve social issues, using a curriculum largely revised and developed by Alt. The program is operated through college chapters across the country, each of which is hosted on a

college campus. Chapters pay a startup fee to join and for access to Social Impact 360's

programming and mentorship in deploying the program.

22.     Social Impact 360 has also, under Alt's leadership, created an initiative to: (i)

activate its alumni, *i.e.,* young business leaders who graduated from its mentorship program on

service projects in the business sector; and, (ii) teach future business leaders how to make

decisions that target a triple bottom line (people, planet, and profit) in the businesses in which

they work. This program, known as Service Corps for Business for Good, reaches more than

1,000 alumni worldwide, many of whom are business leaders at top global companies.

23.     Like many non-profit organizations, Social Impact 360 is managed and governed

by its Board, which consists primarily of representatives of major corporations, philanthropic

organizations, and high net worth individuals. The Board is responsible for, *inter alia*,

contributing funds on a regular basis to cover Social Impact 360's operating expenses and

overhead, including salaries; raising additional funds for the organization; making employment

decisions; and handling legal and financial matters concerning the organization.

24.     At all relevant times relating to Alt's claims, Social Impact 360's Board was

chaired by Thomas Raffa.

25.     Raffa publicly markets himself as a leader in the field of non-profit management

and accounting. He is a CPA affiliated with Marcum LLP, a large international accounting firm,

and the national leader of Marcum's "Nonprofit & Social Sector Group." Raffa's profile page

boasts that he is a "recognized pioneer in social enterprise" and serves on board of numerous

prominent non-profit organizations, including the Boston Philharmonic Orchestra, Social Impact

360, the Mental Health Coalition, and the Park City Community Foundation. He is also the

founding member of an organization called the "Alliance for Nonprofit Management."

26. Upon information and belief, Raffa, either individually or through Marcum LLP, both contributes funding for the operations of Social Impact 360 *and* performs all accounting for Social Impact 360. Indeed, Raffa's firm invoices Social Impact 360 for accounting services and then credits itself with an in-kind donation to the organization.

***Allison Alt's Employment***

27. Allison Alt spent the majority of her career in various roles within non-profit, public policy, and consulting, with a focus on empowering marginalized communities and vulnerable groups, lifting individuals out of poverty, and youth development.

28. In March 2017, pursuant to a written Employment Agreement, Alt became employed with Social Impact 360 as a full-time employee.

29. Alt's Employment Agreement entitles Alt to, *inter alia*, (i) an annual salary of $75,000 (subject to annual increases beyond 2018), (ii) a Single (K) retirement plan, (iii) $100 per month in commuter benefits, (iv) vision, dental, and health benefits, (v) and, reimbursement for business expenses.

30. Raffa executed and signed Alt's employment letter.

31. Raffa supervised Alt on a day-to-day basis during the term of her employment and had the power to make personnel decisions regarding Alt's employment.

32. Additionally, at Raffa's instruction, Alt was required to coordinate and communicate issues related to and including Social Impact 360's payroll, scheduling, board obligations, and other human resources issues through employees of Marcum LLP.

33. Alt worked out of Raffa's office, *i.e.,* the Marcum LLP office, which was also the Social Impact 360's Washington, D.C. headquarters from at least March 2017 until August 2018. In August 2018, Alt moved to New York, where she proceeded to work from home and later a

temporary office space in Manhattan. Eventually, Alt worked out of what would become Social

Impact 360's short-lived headquarters at 143 W. 29th Street, Floor 3, New York, New York from

mid-2019 until she was furloughed on April 23, 2020. Alt's relocation to New York was

approved by Raffa, who agreed that Alt could better serve the organization's Service Corp for

Business Good alumni initiative from that location, as it required connecting with corporate

executives found primarily in New York.

34.     On April 24, 2020, upon furloughing Alt, Raffa relocated the headquarters back to

his Washington, D.C. offices and has had all communications and mailings forwarded to him

there.  Social Impact 360 is no longer operating out of its New York, New York office space.

*Compensation Issues*

35.     Alt's tenure has been fraught with compensation issues.

36.     Over the last two years alone, Social Impact 360 has failed to timely fund payroll

on more than $110,000 in wages, with *at least* $36,000 of those wages still outstanding.  Social

Impact 360 has also failed to pay her wages for time spent working while she was on furlough,

$3,800 in commuter benefits due to her per the Employment Agreement, and reimbursement for

business expenses.

37.     In addition to the wage shortfalls, Social Impact 360 and Raffa *never* created a

Single (K) retirement plan for Alt and have allowed vision benefits promised to Alt in her

Employment Agreement to lapse.

38.     When Alt began, she was tasked with developing Social Impact 360's largely

outdated curriculum and programming. The organization had no working website, an outdated

analog curriculum, no evaluation system, and a disjointed network of chapters that were not

optimized. With very little infrastructure in place when she began, traditional fundraising

endeavors were not practical. Therefore, in its earliest days, the organization relied almost solely on the funding commitments made by the Board.

39.     Within the first year of her employment, Alt had to bring cash shortfalls to Raffa's attention and remind him to solicit the Board gifts that were due and necessary to fund Social Impact 360's costs and payroll.  Alt cannot be paid from an account with insufficient funds.  Managing the Board's commitments and ensuring the organization was sufficiently funded was Raffa's responsibility as Chairman of the Board.

40.     During that first year, Alt developed an online curriculum, a website, an evaluation system, led all student programming, expanded programming nationwide, organized events, and provided significant value to the Social Impact 360 mission. Even as she worked tirelessly on these tasks, Alt found herself growing anxious as the organization's Board failed to fund commitment levels and her salary, causing financial strain on the program and, derivatively, on Alt.

41.     Social Impact 360 and Raffa first failed to pay Alt, and back pay accrued, during this first year in 2017.

42.     Alt's role frequently entails traveling for work, including to attend on-site meetings at college campuses, conferences, or to present to Social Impact 360's Board. Although Alt's employment agreement clearly outlines Social Impact 360's obligation to pay for business travel, Alt had frequent difficulty gaining funds necessary to fully reimburse herself for all travel expenses. As a result, Alt sought overnight accommodations with friends in areas she traveled to for work in order to avoid incurring costs for work travel that would not be reimbursed, and sometimes paid for travel related expenses herself to ensure she could meet work commitments and obligations.

43.     In 2018, Alt met with Raffa to address the severe financial strain she was experiencing due to unpaid wages. He listened, but said nothing in response. Alt was very disturbed and concerned by his lack of response. The Board dues became increasingly delayed each year, exacerbating the funding shortfalls and back pay issues. Even though it was not her responsibility to do so, Alt had to continue to solicit Board gifts ad hoc to cover the organization's expenses. The Board was often not immediately responsive or extremely and increasingly delayed in responding to requests, resulting in insufficient funds to pay Alt's salary.

44.     Despite the financial strain of not being paid at this time, Alt worked hard to run the organization and develop the Service Corp for Business for Good program, which is designed to reach young business leader alumni of the Social Impact 360 programs at top companies and social enterprises globally, and presents an opportunity for the organization to raise funding through its fee-for-service model. She organized events, recruited new chapters, and developed partnerships with corporations to support Social Impact 360's mission.

45.     In order to better serve the Service Corp for Business Good program, Alt and Raffa agreed that she should work from New York, and he instructed her to seek out new office space in New York. Initially, the headquarters remained in Washington, D.C., and Alt worked in New York and commuted to Washington, D.C. regularly to attend Board meetings. By the end of 2018, Alt was working long hours, but as the missed pay periods continued to accrue, Alt was forced to take on side jobs to help pay for her basic needs.

46.     The missed paychecks continued into 2019.

47.     Alt approached Raffa concerning the back pay issues, who acknowledged that Alt was due the back pay, but was unable or unwilling to remedy the issue. Instead, Raffa blamed

Social Impact 360's--and his own--inability to compensate Alt on Social Impact 360's lack of support from its other Board members, *i.e.,* Board members *other* than Raffa.

48.     Unable to squeeze blood from a stone, Alt reluctantly continued to work towards the mission of the organization and accrued her unpaid back pay. Alt bared the full burden of the missed payrolls during these periods financially by relying on savings and side jobs, at one point taking a family loan, to make ends meet.

49.     At the same time, in 2019, the organization was growing exponentially due to Alt's work. Social Impact 360 launched new chapters on college campuses, secured new financial partners, and was deploying new programming that led to the organization being featured at conferences and published in the media. Alt was recognized with awards and accolades for her work during this time.

50.     Nevertheless, the organization continued to fall short on funding for payroll, falling behind on all 26 bi-weekly pay periods in 2019. Several members of the Board failed to fulfill financial commitments, and some failed to participate in Board meetings altogether.

51.     In 2019, Alt addressed the Board, raising the funding gaps and payroll shortfalls. During that meeting, she told the Board that she was owed back pay and explained that the existing model by which Social Impact 360 is funded--as an organization underwritten by a small Board--is not financially viable due, in part, to shortfalls in Board members meeting commitments.

52.     During that meeting she presented a proposal to the Board to pivot the funding approach and move Social Impact 360 into a financially stable position. Alt proposed building and recruiting new benefactors to create an expanded Board to fund the operations of the organization to cover operating expenses, so that additional fundraising efforts, such as a new

fee-for-service model for programming, would be targeted to generate surplus that could be used for further mission investment rather than cover Board obligations.

53.     During this meeting Alt detailed for the Board the personal sacrifices she had made to continue serving the organization when payroll was not funded. She explained that recruiting the right Board would require a significant investment of her time, such that she could not also be expected do short-term fundraising at the same time.  Therefore, she asked the Board to address her current back pay and recommit to funding payroll during this time period to allow her to achieve the recruitment goals.  The Board approved of Alt's plan, and agreed to support this effort.

54.     Alt worked tirelessly to recruit and expand the Board, leveraging her personal and professional relationships for the benefit of Social Impact 360, and to help secure additional funds for the organization. During this time, Alt continued to reiterate what she explained to the Board: that her back pay accruals need to be paid down to enable her to continue pursuing Social Impact 360's fundraising and programming goals. The Board again failed to deliver, and Alt was forced to take on an additional side job, borrow money from her family, and draw down savings to make ends meet, all while continuing to run the national program, building the global alumni program, and now recruiting an expanded Board.

55.     By late 2019, it appeared that, due to Alt's significant efforts recruiting new Board members, Social Impact 360 was projected to be adequately capitalized in 2020. Alt was successful in recruiting new benefactors and introducing them to the Chair of the Board, Raffa.

56.     When the COVID-19 pandemic hit in March 2019, Social Impact 360's upcoming fundraising events were impacted and postponed, including their largest annual fundraising event which was rescheduled to September 2020. Fortunately, the Board support that Alt had recruited,

along with Alt's planning for alternative fundraising events, positioned Social Impact 360 well relative to its prior structure to weather the crisis. Alt was prepared to lead the organization through the crisis, and quickly developed contingency planning, fundraising goals for the upcoming Giving Tuesday virtual event in May, and began canvassing government and philanthropic funding opportunities emerging in response to the pandemic.

57.    Even this progress, however, was undermined by Raffa's continued mismanagement of Social Impact 360's Board and refusal to meaningfully address the back pay issues.

58.    In the process of onboarding the new Board members whom Alt had recruited to Social Impact 360, Raffa failed to disclose Social Impact 360's compensation issues or to resolve Alt's unpaid wages prior to onboarding new members.

59.    Raffa's mismanagement of the back pay issues came to a head during an April 21 Board meeting.

60.    Ordinarily, Alt set the agenda and led Social Impact 360 Board meetings. In preparation for the April 2020 Board meeting, Alt prepared several proposals and projections for the organization, including plans for virtual fundraisers and events in light of the COVID-19 pandemic.

61.    In advance of the April 21 Board meeting, however, Raffa circulated his own agenda and announced that Alt would not be present for the entire meeting. Raffa and the Executive Committee also demanded that Alt prepare financial information, on short notice, even though all of that information resides with Raffa's firm, Marcum LLP.

62.     During the April 21, 2020 meeting, Raffa limited Alt's presence at the meeting to 15 minutes before excluding her from the rest of the Board meeting, thus cutting off the time she had to address the fundraising plans or other agenda items Alt had prepared.

63.     Once Alt was excluded from the meeting, Raffa proposed that Alt be furloughed. On information and belief, he failed to address the proposals Alt had put together regarding fundraising initiatives and strategies to continue programming through the pandemic. Instead, Raffa focused the discussion on the organization's balance sheet and claimed, falsely, that he had been unaware and surprised by the accrued back pay issues.

64.     On information and belief, several new Board members, who Allison had spent months recruiting, immediately resigned in response to Raffa's dishonesty and mistreatment of the organization's key employee, and rescinded their financial commitments to the organization.

65.     On April 24, Alt was furloughed without any resolution to her back pay issues. When Alt was notified of her furlough, she demanded that her back pay be paid by a certain date. Social Impact 360 and Raffa have not paid Alt her wages for at least 13 pay periods, still have not paid her commuter benefits, and have not established or paid into a retirement account for Alt's benefit. Moreover, as a result of the unpaid wages, Social Impact 360 has prejudiced Alt's ability to claim unemployment benefits because of the organization's failure to pay wages during the first two quarters of this year.

66.     Since her furlough, Alt has been forced to draw on a prior retirement account, incurring significant penalties, in order to make ends meet. She has repeatedly informed the Board, including Raffa, of her dire situation, to no avail.

**First Claim for Relief:**
**Unpaid Wages in Violation of Fair Labor Standards Act (29 U.S.C. §206(b))**
**(Against Social Impact 360 and Raffa)**

67.     Plaintiff hereby repeats and realleges each allegation contained in Paragraphs 1 through 66, as if fully set forth herein.

68.     At all times relevant to the Complaint, Plaintiff has been an "employee" and/or covered individual within the meaning of Fair Labor Standards Act ("FLSA"), 29 U.S.C. §203(a), 207(a)(1), worked in New York, New York, and resided in Brooklyn, New York.

69.     As part of her employment, Alt developed Social Impact 360's curriculum, coordinated its programming across college chapters in multiple states, and traveled throughout the United States to perform her job duties.

70.     Alt is not an "executive" as defined by the FLSA. As the only employee, Alt did not regularly direct the work of any other full-time employees. Alt did not have the power to hire or fire employees, or make recommendations regarding the same.

71.     As of April 24, 2020, Defendant Social Impact 360 moved its principal office back to Washington D.C. Defendant Raffa maintains his principal office in Washington, D.C., from which he supervised Plaintiff.

72.     Defendant Social Impact 360 and Raffa are "employers" within the meaning of the FLSA, 29 U.S.C. § 203. Social Impact 360 engages in commerce, offering social entrepreneur programs and curriculum for a fee to chapters on college campuses throughout the United States.

73.     Pursuant to the Employment Agreement, Alt is to be paid an annual salary of $75,000, which Social Impact 360 paid on a semi-monthly basis (*i.e* $2,884.62 gross per week worked, based on a 40 hour work week).

15

74.     Since October 2019, Social Impact 360 and Raffa have failed to pay Alt any of her wages for at least 13 pay periods during which she did work full time, amounting to approximately $36,000 in earned but unpaid wages. Social Impact 360 also furloughed Alt, but then asked her to perform transition work during the furlough period, thereby incurring further wage liability for the days Alt was asked to perform additional work.

75.     As a result, Alt has been denied wages for time worked.

76.     Since 2018, Social Impact 360 and Raffa have fallen behind, catching up only after months went by, on at least 39 payroll periods over that time, totaling over $110,000 in delayed or unpaid wages.

77.     As a result of Defendants' failure to pay Alt's wages, Alt is entitled to payment in full of all outstanding wages due, totaling approximately $36,000.

78.     Alt is also entitled to collect an award of liquidated damages of 100% of the amount of unpaid wages due, pursuant to 29 U.S.C. § 216, totaling approximately $36,000, and should be awarded the full amount allowed at law in light of the willful and repeated nature of Defendants' violations.

79.     Alt is also entitled, pursuant to 29 U.S.C. § 216, to recover attorneys fees and costs incurred in pursuing her back pay.

### Second Claim for Relief:
### Retaliation in Violation of Fair Labor Standards Act (29 U.S.C. §215(3))
### (Against Social Impact 360 and Raffa)

80.     Plaintiff hereby repeats and realleges each allegation contained in Paragraphs 1 through 79, as if fully set forth herein.

81.     On April 21, 2020, upon providing Defendants Social Impact 360 and Raffa notice of further unpaid wages and requesting an audience with the Board to address, among other things, the status of Plaintiff's unpaid wages, Plaintiff was excluded from the Board

meeting. Upon information and belief, Raffa addressed the Board during this meeting and attempted to shift blame for Plaintiff's unpaid wages away from himself, falsely claimed to have been unaware of Plaintiff's unpaid wages, and recommended that Plaintiff be furloughed to avoid incurring any additional wage obligations to her.

82.     Following this meeting, Plaintiff was informed by Raffa that she would be furloughed at the end of the day on April 24, 2020.

83.     Raffa's recommendation to furlough Plaintiff was in retaliation for her speaking up regarding her unpaid wages and alerting new Board members to Raffa's neglect of this liability.

84.     Defendants' decision to furlough Plaintiff constitutes an adverse action within the meaning of 29 U.S.C. § 215(3).

85.     Plaintiff is entitled to immediate reinstatement as the Executive Director of Social Impact 360, at her prior rate of pay.

**Third Claim for Relief:**
**Unpaid Wages in Violation of New York Labor Law §191 and §663**
**(Against Social Impact 360 and Raffa)**

86.     Plaintiff hereby repeats and realleges each allegation contained in Paragraphs 1 through 85, as if fully set forth herein.

87.     At all times relevant to the Complaint, plaintiff has been an "employee" within the meaning of New York Labor Law and resided in Brooklyn, New York.

88.     In 2019, Defendant Social Impact 360 moved its principal office from Washington, D.C. to 143 W. 29th Street, Floor 3, New York, New York, where Plaintiff worked during her employment. Defendants Social Impact 360 and Raffa are "employers" within the meaning of New York Labor Law.

89.     Alt is not an "bona-fide executive" as defined by New York Labor Law. As the only employee, Alt did not regularly direct the work of any other full-time employees. Alt did not have the power to hire or fire employees, or make recommendations regarding the same.

90.     Plaintiff's employment commenced on March 1, 2017. Pursuant to the Employment Agreement, Alt is to be paid an annual salary of $75,000, which Social Impact 360 was to pay on a bi-weekly basis.

91.     Since 2018 alone, Social Impact 360 and Raffa have fallen behind, catching up only after months went by, on at least 39 payroll periods over that time, totaling over $110,000 in delayed or unpaid wages. Additional payroll periods were missed for which Alt does not currently have detailed records, which records reside with Marcum LLP.

92.     Since October 2019, Social Impact 360 and Raffa have failed to pay Alt any of her wages for at least 13 of those pay periods, amounting to approximately $36,000 in wages earned but unpaid, in violation of New York Labor Law § 191. In addition, Alt has been asked to provide transition activities while on furlough, without pay.

93.     As a result, Alt has been denied wages for time worked.

94.     Plaintiff notified Social Impact 360 and Raffa of the non-payment issues and the need to cure the unpaid wages on multiple occasions throughout 2018, 2019, and 2020. Social Impact 360 and Raffa were also aware of these issues because they control the accounting for the organization, and prepared reporting on back pay amounts. A portion of outstanding non-payment was partially cured on May 22, 2020, but approximately $36,000 in outstanding back pay, dating well back into 2019, remains unpaid.

95.     Social Impact 360 and Raffa did not have a good faith basis to believe that Social Impact 360's failure to timely pay Alt's wages was in compliance with the law, and understood

that Social Impact 360's failure and refusal to pay Alt's wages is a violation of New York Labor Law.

96.     By engaging in the foregoing conduct, Social Impact 360 and Raffa have violated Alt's rights under New York Labor Law.

97.     As a result, Alt has been denied wages, and has incurred damages thereby.

98.     As a result of Defendants' failure to pay Alt's wages, Alt is entitled to payment in full of all outstanding wages due, which totals approximately $36,000.

99.     Alt is also entitled to collect an award of liquidated damages of 100% of the amount of unpaid wages due, N.Y. Lab. Law § 198.1-a, totaling approximately $36,000, and should be awarded the full amount allowed at law in light of the pervasive and repeated nature of Defendants' violations.

100.    Alt is also entitled to collect a civil penalty of $500 for each failure to pay wages pursuant to N.Y. Lab. Law § 197, totaling at least $19,500 for the 39 missed pay periods between late 2018 and April 2020.

101.    Alt is also entitled to recover attorneys fees and costs incurred in pursuing her back pay.

**Fourth Claim for Relief:**
**Denial of Benefits in Violation of New York Labor Law §198-c**
**(Against Social Impact 360 and Raffa)**

102.    Plaintiff hereby repeats and realleges each allegation contained in Paragraphs 1 through 101, as if fully set forth herein.

103.    Plaintiff was denied commuter benefits, a retirement plan, vision benefits, and reimbursement for business expenses, as set forth in the Employment Agreement. Plaintiff has also been denied unemployment benefits due to Defendants' failure to pay wages and related taxes.

104.     Plaintiff relied on the promises made in the Employment Agreement in deciding to accept employment. Social Impact 360 has failed to comply with the Employment Agreement and, to date, has failed to: (i) pay to Plaintiff $3,800 in commuter benefits; (ii) establish a Single K retirement plan for the benefit of Plaintiff; (iii) failed to cause the Board of Directors to fund the Single K retirement plan; (iv) failed to reimburse Plaintiff for some business expenses; and, (v) failed to keep current on Plaintiff's vision insurance plan.

105.     At the time of her denial of benefits, Plaintiff was the Executive Director of Social Impact 360.

106.     Social Impact 360 and Raffa knew or should have known that these benefits had been denied to Plaintiff, and failed to perform the obligations set forth in the Employment Agreement as well as its legal obligations to pay into New York's unemployment insurance programs.

107.     Social Impact 360 and Raffa did not have a good faith basis to believe that Social Impact 360's denial of benefits was in compliance with the law, and understood their denial of benefits is a violation of New York Labor Law.

108.     Based on the foregoing, Defendants' failure to afford Plaintiff the agreed-upon benefits constitutes denial of benefits promised by Social Impact 360 pursuant to her Employment Agreement with Plaintiff.

109.     As a result of Defendants' conduct, Plaintiff is entitled to recover the value of the benefits denied to her, in an amount to be determined at trial, and including the full amount of unemployment benefits to which she would otherwise have been entitled during her furlough, up to $19,656 in New York State unemployment benefits, and $8,400 in Federal unemployment benefits.

110.    Plaintiff is also entitled to an award of all economic loss, in an amount to be determined at trial.

111.    Alt is also entitled to collect an award of liquidated damages of 100% of the amount of benefits denied, N.Y. Lab. Law § 198.1-a, in an amount to be determined at trial, and should be awarded the full amount allowed at law in light of the pervasive and repeated nature of Defendants' violations.

112.    Alt is also entitled to recover attorneys'fees and costs incurred in pursuing her back pay.

**Fifth Claim for Relief:**
**Breach of Employment Agreement**
**(Against Social Impact 360 and Raffa)**

113.    Plaintiff hereby repeats and realleges each allegation contained in Paragraphs 1 through 112, as if fully set forth herein.

114.    Plaintiff was hired by Social Impact 360 pursuant to an Employment Agreement, with a start date of March 1, 2017. Under the terms of the Employment Agreement, Plaintiff was hired as the Executive Director of the organization. Alt was responsible for developing programming and a curriculum to be implemented at Social Impact 360 chapters across the country, coordinating events, and acting as the liaison for all chapters and alumni of the program. Alt did not have any direct reports, and she reported up to Raffa, who served as President of the organization and Chair of the Board.

115.    Pursuant to the Employment Agreement, Alt was promised, among other things: (i) a salary of $75,000 per year, and was eligible for Board approved annual increases in subsequent years; (ii) a "Single (K)" retirement plan, with anticipated contributions from the Board to that plan; (iii) commuter benefits up to $100 per month; (iv) reimbursement for

business travel and expenses; and, (v) other benefits such as vision care, health care, life insurance, and disability insurance.

116. Alt has performed all duties in her role as Executive Director.

117. Social Impact 360 breached the Employment Agreement by: (i) failing to pay Alt approximately $36,000 in wages earned and delaying payment of wages earned; (ii) failing to establish a retirement plan; (iii) failing to cause the Board to make contributions to that retirement plan; (iv) failing to provide $3,800 in commuter benefits to Alt during her employment; (v) failing to reimburse Alt for certain business expenses; and, (vi) allowing Alt's vision coverage to lapse.

118. Specifically, Social Impact has failed to pay Alt at least $36,000 in wages earned.

119. Social Impact 360 never established a retirement plan for the benefit of Alt, and the Board, including Raffa, never made any contributions to a retirement plan.

120. Social Impact 360 failed to pay Alt the promised level, up to $100 per month, of commuter benefits.

121. Social Impact 360 failed to reimburse Alt for some reimbursable business expenses, in violation of the Employment Agreement.

122. Social Impact 360 failed to pay premiums for Alt's vision plan, allowing coverage to lapse, in violation of the Employment Agreement.

123. As a result of Social Impact 360's breaches, Alt has been damaged. Not only has she not received the benefit of the bargained for wages and benefits, but she has been forced to draw on savings, take out loans, sell personal property at discounts, and draw on retirement accounts to meet her basic needs such as rent, utilities, and food.

124.    As a result of Defendants' conduct, Plaintiff is entitled to recover the value of the wages and benefits denied to her and an award to compensate Plaintiff for all economic loss caused by Defendants' breach, in an amount to be determined at trial.

WHEREFORE, Plaintiff prays that this Court enter judgment against Social Impact 360 and Raffa as follows:

A.    An award to Plaintiff of her actual damages, in an amount to be determined at trial, for lost wages, benefits and other remuneration;

B.    An award to Plaintiff of the value of the benefits promised by the Employment Agreement, in an amount to be determined at trial;

C.    An award for any and all economic loss due to Defendants' breach of the Employment Agreement, in an amount to be determined at trial;

D.    An award of liquidated damages in the amount of 100% of the total amount of wages and value of benefits due;

E.    An award of civil penalties;

F.    An award of reasonable attorneys' fees, costs, and other expenses of litigation, and a judgment including penalties pursuant to New York Labor Law § 198.4 for automatic increase by 15 percent of any unpaid portion of such reasonable attorneys' fees, costs, and other expenses of litigation after 90 days;

G.    Such other and further relief as the Court may determine warranted, just and proper.

## **Jury Demand**

Plaintiff demands a jury for all claims stated herein.

New York, NY
June 11, 2020

SLARSKEY LLC

Renee Bea
Evan Fried
420 Lexington Avenue, Suite 2525
New York, NY  10170
(212) 658-0661
*Counsel for Plaintiff*