# Exhibit 1

## SETTLEMENT AND MUTUAL RELEASE AGREEMENT

**THIS SETTLEMENT AND MUTUAL RELEASE AGREEMENT** (this "Agreement") is entered into and effective as of the date the Court approves the dismissal of the Lawsuit as described herein, by and between Allison Alt ("Alt") on the one hand and Social Impact 360, Inc. ("SI360") and Thomas Raffa ("Raffa"), on the other hand (Alt, SI360 and Raffa are each referred to individually as a "Party" and collectively, Alt, SI360 and Raffa are referred to as the "Parties").

**WHEREAS**, Alt has asserted various claims against SI360 and Raffa which are the subject of litigation pending in the United States District Court for the Southern District of New York ("Court"), styled *Alt v. Social Impact 360, Inc., et al.*, Case No. 1:20-cv-4478 (the "Lawsuit");

**WHEREAS**, SI360 and Raffa have denied any and all liability to Alt with regard to claims asserted against them in the Lawsuit;

**WHEREAS**, the Parties wish to fully settle and resolve the claims and disputes between them, concerning the Lawsuit. To that end, the Parties have made this Agreement according to the terms, conditions, and provisions hereof;

**WHEREAS**, the Parties have reached an agreement as to the final settlement of the Lawsuit as between themselves and desire to enter into this Agreement as they believe it in their respective best interests;

**WHEREAS**, this Agreement is a compromise of disputed claims and nothing herein shall constitute, or be construed as, an admission of any demand, charge or allegation, or concession of liability, on the part of any Party, and each Party expressly denies all liability to any other Party.

**NOW, THEREFORE**, in consideration of the foregoing and for other good and valuable consideration as provided below, the receipt and sufficiency of which are hereby acknowledged, the Parties represent, warrant, and agree as follows:

### Terms and Conditions

1. **Recitals Incorporated**. The recitals set forth above are made part of and incorporated in this Agreement.

2. **Settlement Amount**. SI360 shall pay Alt the total sum of Fifteen Thousand Dollars ($15,000.00) ("Settlement Amount") within ten (10) business days following Alt's execution of this Agreement, which is in addition to SI360's prior gross payment of $35,038.54 to Alt, which satisfies all of Alt's wage-and-hour claims in this matter. The payment of the Settlement Amount shall be for Alt's alleged non-wage claims, including claims for emotional distress and/or attorneys' fees, and shall be reflected in an IRS Form 1099 provided to Alt.

3. **Payment Instructions**. The Settlement Amount shall be paid to Alt's legal counsel via ACH wire transfer to the Slarskey LLC Attorney Client Trust Account/IOLA, c/o

First Republic Bank (with account and routing information supplied by Alt's counsel), on or before ten (10) calendar days following Alt's execution of this Agreement.

4.    **Raffa, Huster, and Shah Resignations**. Upon execution of this Agreement by the Parties, Board Chair Raffa, as well as Directors William Huster and Neil Shah, shall tender their resignations from the SI360 Board of Directors.

5.    **Alt Resignation**. Alt acknowledges that she has voluntarily resigned her former employment with SI360 as its Executive Director, effective as of the date Alt executes this Agreement, and SI360 has accepted such resignation.

6.    **Consulting Agreement**.  As soon as is practicable following the execution of this Agreement, SI360 shall retain Alt in the form of a three-month, part-time Consulting Agreement, pursuant to which SI360 will pay Alt the gross amount of $12,000.00 in consulting fees for the services she agrees to provide to SI360, as provided in the Consulting Agreement. The terms and conditions of Alt's consulting services will be set forth in the Consulting Agreement.

7.    **Continuation of Marcum's Services**. Raffa represents that he has procured the agreement of his employer, Marcum, LLP ("Marcum") to continue to provide *pro bono* accounting services to SI360 for a period of approximately three (3) months following the execution of the Settlement Agreement. Such relationship shall end no later than January 31, 2021.  Such services provided by Marcum shall include the preparation and filing of SI360's Form 990 for 2020.  In exchange, SI360 and Alt each commit to hold Marcum harmless and mutually agree not to assert any claims against Marcum relating to any accounting or financial services it provides to SI360, including any act or omission by Marcum in connection with the provision of such services.

8.    **Acknowledgment Regarding Service Corps. Program**. SI360 acknowledges that the Service Corps. program developed by Alt during her prior tenure as Executive Director for SI360 constitutes intellectual property ("IP") that is owned exclusively by Alt, and Alt hereby provides a perpetual, non-exclusive license of the Service Corp. IP to SI360 for its use on behalf of the organization.

9.    **Unemployment Benefits Assistance**.  SI360 shall take all necessary steps to assist Alt in obtaining unemployment benefits for the period of her employment with SI360 during which she was not receiving income due to furlough, including by providing truthful statements to the relevant administrative agencies on Alt's behalf.

10.   **Mutual General Release**.  The releases provided herein by SI360 and Raffa are expressly provided in consideration for the resolution of Alt's non-wage-and-hour claims. This Agreement resolves all issues related in any way to Alt's prior employment with SI360, including the alleged non-payment of wages, and including all claims asserted or which could have been asserted in the Lawsuit.  Alt hereby releases SI360, Raffa, and all its and their employees or affiliates, and their respective current and former directors (including but not limited to Thomas Raffa, Sander Mueller, Neil Shah, William Huster, Amanda Cole, Justin Weinstein, Hunter Pritchard, Christina Huang, Lisa Larson, Mark Flowers, Brigitta Anschuetz, Lanada Williams, Adrian Adderley, Bennett Wetch, Nadia Cayce, Travis Smith, Lola Adedokun

and Elise James-Decruise), officers, employees, agents, insurers, benefit plans, plan administrators and other plan fiduciaries, successors and assigns (collectively, the "SI360 Released Parties") from and waives any and all claims, whether known or unknown, arising from or related in any way to the Lawsuit, Alt's employment, or the termination thereof. SI360 and Raffa, individually and on behalf of the SI360 Released Parties, hereby release Alt from and waive any and all claims, whether known or unknown, arising from or related in any way to the Lawsuit, Alt's employment, or the termination thereof. This release and waiver of claims is intended to be construed broadly to encompass any and all claims of any kind or character including, without limiting the generality of the foregoing, any and all claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Rehabilitation Act, the Employee Retirement Income Security Act, the Occupational Safety and Health Act, the National Labor Relations Act, the Family and Medical Leave Act, the Fair Labor Standards Act, the New York Human Rights Law, the New York Paid Leave Law, the New York Labor Code, and any other federal, state or local constitution, statute, regulation, or ordinance, and any and all common law claims including, but not limited to, claims for wrongful or retaliatory discharge, intentional infliction of emotional distress, negligence, defamation, invasion of privacy, breach of fiduciary duty, and breach of contract. Nothing contained herein shall prevent Employee from filing a charge with or participating in an investigation by a federal, state or local governmental agency, provided that Employee hereby agrees to accept no money in connection with any such charge or investigation. Excluded from this release are any claims for the enforcement of the terms of this Agreement, any claims that arise after the execution of this Agreement, or any claims which cannot be waived as a matter of law.

11.    **Mutual Non-Disparagement**.  The Parties agree that they will refrain from defaming or disparaging one another in any manner that would tend to cast another Party in a negative light with regard to such Party's personal or professional reputation, character, or integrity.  Notwithstanding the foregoing, Alt is not prevented from making truthful statements regarding her experience with regard to litigating her wage-and-hour claims in the Lawsuit.

12.    **Authority and No Assignment**.  Each of the Parties represents and warrants that he, she or it has the power and authority to enter into this Agreement and there has been no assignment, negotiation, or other transfer or alienation of any claim or other thing being released hereunder.

13.    **No Admission**.  The Parties agree that they are entering into this Agreement for the sole purposes of resolving actual and potential claims and to avoid the costs and uncertainty of litigation.  The negotiation and signing of this Agreement is not to be considered an admission of any improper acts, conduct or any liability on the part of any Party, and does not constitute an admission by any Party of any liability arising from or relating to the Lawsuit.

14.    **Entire Agreement**.  This Agreement sets forth the entire agreement and understanding of the Parties relating to the subject matter contained herein and merges all prior discussions, agreements, contracts or other instruments between them, and no Party shall be bound by any subsequent instrument, agreement or representation pertaining to the subject matter contained herein unless expressed in writing and signed by the Party to be bound thereby.

15.   **Severability**.  If any clause, phrase, provision, term or portion of this Agreement is declared to be invalid by a court of competent jurisdiction or if any term or provision of this Agreement conflicts with any applicable state or federal law, such provision shall be rendered ineffective and severable for the remainder of this Agreement without affecting or impairing the enforceability or validity of the remainder of this Agreement.

16.   **Governing Law**.  This Agreement shall be governed by the laws of the State of New York without regard to choice of law principles.

17.   **Binding Agreement**. The Parties warrant that they have read this Agreement, that they intend to be legally bound by the same, that they have entered into this Agreement freely and voluntarily, and that they have the full right, power, authority, and capacity to enter into and execute this Agreement.  This Agreement has been entered into by the Parties not as a result of coercion, duress, or undue influence from any person or entity.  Each of the Parties further warrants that this Agreement is entered into without relying upon any statement or representation made by any other Party not contained in this Agreement.

18.   **Dismissal**.  Within five (5) calendar days of full execution of this Agreement and Alt's receipt of the Settlement Amount, whichever is later, Alt will file a notice of dismissal with prejudice of the Lawsuit, with each Party to bear its/her/his own attorneys' fees and costs.

19.   **Adequate Representation and Authority to Sign**.  The Parties, including through their counsel of record in the Lawsuit, participated jointly in the negotiation and preparation of this Agreement, and each Party has had the opportunity to obtain the advice of legal counsel and to review and comment upon this Agreement.  Accordingly, it is agreed that no rule of construction shall apply against any Party or in favor of any Party.  This Agreement shall be construed as if the Parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against one Party and in favor of the other.  In any action to enforce or interpret this Agreement, the Agreement shall be construed in a neutral manner, and no term or provision of this Agreement shall be construed more or less favorably to any one Party.

20.   **Execution**.  This Agreement may be executed in two or more counterparts and each shall have the same force and effect as the other, as one and the same instrument.  A signature sent via facsimile or email in PDF format is an acceptable method of execution of this Agreement.

**[Signature Page Follows]**

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the day and year first above written.

**SOCIAL IMPACT 360, INC.**

By: _____

Its: ____Board Member_____

**THOMAS RAFFA**

By: _____

Its: _____

**ALLISON ALT**

By: _____

Its: _____

5